UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TALK FUSION, INC.,

    Plaintiff,

v.                                          Case No: 8:16-cv-1616-T-30JSS

NANCY BURLING and ANDREW
BURLING,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on the Order Granting Permanent Injunction ("Permanent Injunction") (Dkt. 21), Plaintiff Talk Fusion, Inc.'s Motion for Order to Show Cause Against Defendants for Violating Order Granting Permanent Injunction ("Motion") (Dkt. 23), the Court's Order to Show Cause, requiring Defendants to appear before the Court and show cause as to why sanctions should not be entered against them for violating the Permanent Injunction ("Order to Show Cause") (Dkt. 25), and Defendants' response to the Motion and the Order to Show Cause ("Response") (Dkt. 28).

On August 9, 2016, a hearing was held at which the Court heard argument of counsel and the testimony of Defendant Nancy Burling and Plaintiff's President, Robert Reina. Upon consideration of the Permanent Injunction, the Motion, the Order to Show Cause, the Response, the testimony of Mrs. Burling and Mr. Reina, and the argument of counsel at the hearing, the Court recommends that an order be entered holding Mrs. Burling in civil contempt for her violations of the Permanent Injunction. The undersigned further recommends that, as sanctions for Mrs. Burling's violations, an order be entered requiring Mrs. Burling to pay Plaintiff the attorneys' fees

it incurred in prosecuting Mrs. Burling's violations, disgorge any commissions or other money earned from her violations of the Permanent Injunction, and pay a coercive fine.

## BACKGROUND

**A.     Overview**

Plaintiff is an Internet-based company that sells video communication products for personal and business use.  (Dkt. 1 ¶ 10.)  Through Plaintiff's website, Plaintiff contracts with sales associates to market its products.  (*Id.* ¶ 9.)  When sales associates join Plaintiff, they agree to comply with Plaintiff's policies, which include a non-solicitation agreement.  (*Id.* ¶¶ 11, 16, 17, Ex. A ¶ 18.)  The non-solicitation agreement provides that sales associates "are free to participate in other network marketing programs," but that for the term of the agreement ("one year from the date of enrollment") "and for one year thereafter . . . with the exception of an Associate's personally sponsored downline Associates, an Associate may not directly or indirectly Recruit other Talk Fusion Associates for any other network marketing business."  (*Id.* ¶ 17, Ex. A ¶¶ 3, 18.)  "Recruit" is defined as "the direct or indirect, actual or attempted, sponsorship, solicitation, enrollment, encouragement, or effort to influence in any other way, another Talk Fusion Associate to enroll or participate in another network marketing opportunity" and "[c]onduct constitutes recruiting even if the Associate's actions are in response to an inquiry made by another Associate or Customer."  (*Id.*)

Defendants Nancy Burling and Andrew Burling were Plaintiff's sales associates, but Plaintiff terminated them on June 17, 2016 based on the conduct alleged in the complaint.  (Dkt 7 ¶¶ 7, 11.)  Prior to June 16, 2016, Defendants became distributors for another network marketing company named Jeunesse Global ("Jeunesse").  (Dkt. 1 ¶¶ 12–13.)  On June 17, 2016, Plaintiff filed a one-count complaint against Defendants seeking a temporary restraining order and

preliminary and permanent injunctive relief against Defendants enforcing the non-solicitation agreement. (*Id.* ¶ 27.) Plaintiff also moved for entry of a temporary restraining order and preliminary injunction. (Dkt. 5.) On June 29, 2016, the Court entered a report and recommendation, in which the Court recommended that (1) Plaintiff's request for a temporary restraining order be granted and (2) a hearing be held before the Court on Plaintiff's motion for preliminary injunction. (Dkt. 14.)

**B.     The Permanent Injunction**

On July 14, 2016, the parties filed a stipulation to the entry of a permanent injunction against Defendants. (Dkt. 20.) On the same day, the Court entered the Permanent Injunction, enjoining Defendants from:

> . . . directly or indirectly, and whether alone or in concert with others, for a period of one year commencing on June 16, 2016, from soliciting, recruiting, or otherwise initiating any further contact or communication with any Talk Fusion Associate or customer, with the exception of an Associate who was personally sponsored by the Burlings, for the purpose of inviting, recruiting, encouraging, or requesting the Associate to join Jeunesse Global or any other network marketing business.

(Dkt. 21 ¶ 2.) The District Court denied Plaintiff's motion for preliminary injunction and the Report and Recommendation as moot and closed the case. (Dkt. 21 ¶ 5.)

**C.     The Motion and the Order to Show Cause**

On July 25, 2016, Plaintiff filed the Motion, alleging that Mrs. Burling violated the Permanent Injunction by communicating with Plaintiff's sales associate, Ricardo Rodriguez, who was not personally sponsored by Defendants. (Dkt. 23 ¶¶ 1, 10.) In a declaration in support of the Motion, Mr. Rodriguez avers that he had a conversation with Mrs. Burling via Facebook Messenger in which Mrs. Burling "attempted to recruit [Mr. Rodriguez] to Jeunesse." (Dkt. 24 ¶ 3.) In the Motion, Plaintiff argues that Mrs. Burling violated the Permanent Injunction during her conversation with Mr. Rodriguez in the following seven instances:

1. provid[ing] a link to a complaint in a class action lawsuit against Talk Fusion;

2. stat[ing] "We do have a solution with a Legacy Company." The Burlings had previously described Jeunesse Global as a "Legacy" company when recruiting Talk Fusion Associates to join Jeunesse Global;

3. stat[ing] "Talk to Paul your sponsor," thereby confirming that the Burlings were not [Mr. Rodriguez's] personal sponsor with Talk Fusion;

4. later stat[ing], "[Defendants] did not personally sponsor [Mr. Rodriguez], Joel and Paul did";

5. stat[ing] there were other Talk Fusion Associates who would be joining their team as distributors at Jeunesse Global;

6. stat[ing] there was another lawsuit that was going to be filed against Talk Fusion; and

7. invit[ing] [Mr. Rodriguez] to talk with [Mrs. Burling] in the next few days.

(Dkt. 23 ¶ 10; Dkt. 24 ¶ 6.)

Plaintiff seeks an order finding Defendants in civil contempt for violating the Permanent Injunction. (Dkt. 23 at 4.) As sanctions for Defendants' violations, Plaintiff requests that the Court enter an order (1) imposing a coercive fine against Defendants in the amount of $10,000.00 per violation of the Permanent Injunction, (2) directing Defendants "to disgorge any commissions or other money paid to the Burlings by Jeunesse Global resulting from the recruitment or sales of Talk Fusion Associates not personally sponsored by the Burlings," and (3) awarding Plaintiff its fees and costs incurred in bringing the Motion. (Dkt. 23 at 6–7.)

On July 26, 2016, the Court entered an order finding that Plaintiff "met its initial burden of establishing by clear and convincing evidence that the [Permanent Injunction] has been violated" and granting the Motion "to the extent that Defendants shall appear before the Magistrate Judge and SHOW CAUSE why sanctions should not be entered against them for violating the Court's Permanent Injunction." (Dkt. 25) (emphasis in original.)

In the Response, Defendants admit that Mrs. Burling violated the Permanent Injunction because portions of her conversation with Mr. Rodriguez "can be construed as an attempt to 'recruit' Mr. Rodriguez." (Dkt. 28 at 3.) However, Defendants argue that the conversation also reveals that Mr. Rodriguez initiated the conversation, not Mrs. Burling, and that Mrs. Burling, in some instances, was answering Mr. Rodriguez's questions about Jeunesse. (Dkt. 28 at 3.) Also, Defendants argue that Mr. Rodriguez may have been acting on Plaintiff's behalf to coerce Mrs. Burling's violation of the Permanent Injunction. (Dkt. 28 at 4.) As to sanctions for Mrs. Burling's admitted violations of the Permanent Injunction, Defendants request that the Court not impose more than a nominal fine because Plaintiff has not shown that it was harmed by Mrs. Burling's violations because Mr. Rodriguez was not recruited from Plaintiff. (Dkt. 28 at 6.)

**APPLICABLE STANDARDS**

A court's finding of civil contempt "must be based on clear and convincing evidence that a court order was violated." *Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d 1539, 1545 (11th Cir. 1996) (internal quotations omitted). While "more exacting" than a showing of a preponderance of evidence, clear and convincing evidence "does not require proof beyond a reasonable doubt." *Tom James Co. v. Morgan*, 141 F. App'x 894, 897 (11th Cir. 2005). "[O]nce the moving party makes a prima facie showing that the court order was violated, the burden of production shifts to the alleged contemnor to show a present inability to comply that goes beyond a mere assertion of inability" to comply. *Howard Johnson Co. v. Khimani*, 892 F.2d 1512, 1516 (11th Cir. 1990) (internal quotations and citations omitted).

In civil contempt proceedings, the purpose of imposing sanctions on the party in contempt of court is to coerce the party's compliance with the court's order and to compensate the movant "for losses sustained." *Tom James Co.*, 141 F. App'x at 899 (quoting *Local 28 of Sheet Metal*

*Workers' Int'l Ass'n v. E.E.O.C.*, 478 U.S. 421, 443 (1986). Courts have "wide discretion to fashion an equitable remedy for contempt that is appropriate to the circumstances." *E.E.O.C. v. Guardian Pools, Inc.*, 828 F.2d 1507, 1515 (11th Cir. 1987).

## ANALYSIS

The Permanent Injunction enjoins Defendants from "directly or indirectly . . . soliciting, recruiting, or otherwise initiating any further contact or communication with any Talk Fusion Associate . . . with the exception of an Associate who was personally sponsored by the Burlings, for the purpose of inviting, recruiting, encouraging, or requesting the Associate to join Jeunesse Global or any other network marketing business." (Dkt. 21 ¶ 2.) In the Response, Defendants acknowledge that statements Mrs. Burling made to Mr. Rodriguez violated the Permanent Injunction. (Dkt. 28 at 3.) Likewise, at the hearing, Mrs. Burling testified that she understood that, under the Permanent Injunction, she was prohibited from soliciting Plaintiff's sales associates that Defendants did not personally sponsor and that her conduct in her conversation with Mr. Rodriguez violated the Permanent Injunction.

The Court has considered Defendants' arguments that Mrs. Burling did not initiate the conversation with Mr. Rodriguez (Dkt. 28 at 3) and Mrs. Burling's testimony regarding extenuating factors contributing to her emotional state and attitude toward Plaintiff during her conversation with Mr. Rodriguez. However, the Permanent Injunction's proscriptions are clear and Plaintiff has shown, through clear and convincing evidence, that Mrs. Burling violated the Permanent Injunction. Accordingly, the Court recommends entry of an order holding Mrs. Burling in civil contempt for her violations of the Permanent Injunction.

As to sanctions to impose against Mrs. Burling for her violations of the Permanent Injunction, in a factually analogous case, the Eleventh Circuit found sanctions of attorneys' fees

and costs, disgorgement of profits, and a coercive fine appropriate. *Tom James Co.*, 141 F. App'x at 899–900. In that case, a former employee of a male apparel company "contacted and made sales to customers whom he previously serviced while employed by [the company]." *Id.* at 896. The company sued the former employee for alleged violations of non-compete covenants. *Id.* The parties entered into a settlement agreement and the former employee consented to entry of an injunction against him, which enjoined him from directly or indirectly soliciting or selling clothing to the company's customers. *Id.* Thereafter, the company alleged that the former employee violated the injunction by contacting five of its customers and, thus, the company moved for a finding of civil contempt. *Id.* After an evidentiary hearing, the district court found the former employee in civil contempt and ordered that he pay to the company "nominal damages of $500.00 ($100.00 [for each violation]) plus attorney's fees" of over $75,000.00 and costs of over $5,000.00. *Id.* at 897. On appeal, the Eleventh Circuit upheld the district court's imposition of sanctions and additionally held that it was within the district court's power to order the former employee to disgorge any profits he earned from his acts in violation of the injunction as a civil contempt sanction. *Id.* at 899. The Eleventh Circuit thus remanded for the district court's consideration of whether to require disgorgement of any alleged profits. *Id.* 899–900.

Here, the Court recommends entry of an order requiring Mrs. Burling to: (1) pay Plaintiff's attorneys' fees and costs, (2) disgorge any commissions or other money earned from her attempt to recruit Mr. Rodriguez to Jeunesse, and (3) pay a coercive fine. As to attorneys' fees, upon review of Plaintiff's affidavit of attorneys' fees (Dkt. 30), the Court finds that Plaintiff's request for $10,861.50 in attorneys' fees for its prosecution of Mrs. Burling's violation of the Permanent Injunction—which are fees for Plaintiff's counsel's time spent conferring with the client, preparing the Motion and supporting affidavit, and preparing for and conducting Mrs. Burling's deposition—

is reasonable. Accordingly, the Court recommends that Mrs. Burling be required to pay Plaintiff's attorneys' fees in the amount of $10,861.50. Second, the Court recommends that Mrs. Burling be required to disgorge any commissions or other money she earned from her attempt to recruit Mr. Rodriguez to Jeunesse. *See Tom James Co.*, 141 F. App'x at 899. Finally, the Court recommends that imposition of a coercive fine against Mrs. Burling of $500.00 for each of her violations of the Permanent Injunction is appropriate. Upon review of the Motion and Mr. Rodriguez's supporting affidavit (Dkt. 23 ¶ 10; Dkt. 24 ¶ 6), the Court finds that Mrs. Burling violated the Permanent Injunction seven times. Therefore, the Court recommends imposition of a $3,500.00 coercive fine against Mrs. Burling. Accordingly, it is

**RECOMMENDED**:

1.	The Court enter an order (1) holding Defendant Nancy Burling in civil contempt and (2) imposing the following sanctions against Mrs. Burling for her violations of the Permanent Injunction:

    a.	Requiring Mrs. Burling to pay Plaintiff $10,861.50 to reimburse Plaintiff for its attorneys' fees incurred in prosecuting Mrs. Burling's violations of the Permanent Injunction;

    b.	Requiring Mrs. Burling to disgorge any commissions or other money earned from her attempt to recruit Mr. Rodriguez to Jeunesse; and

      c.      Requiring Mrs. Burling to pay a coercive fine of $3,500.00, which represents $500.00 for each of her seven violations of the Permanent Injunction.

**IT IS SO REPORTED** in Tampa, Florida on August 10, 2016.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:
The Honorable James S. Moody, Jr.
Counsel of Record